**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMAR BOYKINS,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **SEPTA,** | **NO.  22-4447** |
| **Defendant.** | |

**HODGE, J.**                                                                 **September 26, 2025**

## <u>MEMORANDUM</u>

In this action, Plaintiff Jamar Boykins ("Boykins" or "Plaintiff") asserts the following claims against his employer, Southeastern Pennsylvania Transportation Authority ("SEPTA" or "Defendant"): (1) race discrimination and retaliation in violation of Title VII of the Civil Rights Act ("Title VII") and the Pennsylvania Human Relations Act ("PHRA") (Counts I-IV); and (2) interference and retaliation in violation of the Family and Medical Leave Act ("FMLA") (Count V). (ECF No. 1.) SEPTA has moved for summary judgment on all claims. (ECF No. 23.) For the reasons that follow, SEPTA's Motion is granted.

## I.    BACKGROUND[1]

Boykins, who is Black, has been employed by SEPTA as an electrician since December 1998. (ECF No. 1 at ¶¶ 9–10.) He currently serves as a first-class electrician in SEPTA's Bridges and Building Department of its Railroad Division. (*Id.* at ¶ 9.) SEPTA's Building and Bridges Department has two sub-departments: Maintenance and Construction. (ECF No. 23-3 at 1.) Boykins is employed in the Maintenance Department. (ECF No. 23-7 at 4.)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

In 2016, Plaintiff filed Civil Action No. 16-985 against SEPTA pursuant to Title VII and the PHRA, alleging race discrimination and retaliation under a theory of failure to promote. (ECF No. 23-3 at 1.) Magistrate Judge Marilyn Heffley granted SEPTA's motion for summary judgment in that action, *Boykins v. SEPTA*, 2017 U.S. Dist. LEXIS 56541 (E.D. Pa. Apr. 13, 2017), which the Third Circuit affirmed, *Boykins v. SEPTA*, 722 F. App'x 148 (3d Cir. 2018).

At the time relevant to the events at issue here, Harry McCrossin ("McCrossin") was the Assistant Director in charge of the Maintenance Department in which Boykins worked. (ECF No. 23-10 at 3.) McCrossin became Assistant Director in March 2021 (*id.*) and was aware of Plaintiff's prior lawsuit against SEPTA (ECF No. 23-3 at 1).

Promotions for positions within SEPTA are governed by SEPTA's "Employment Hire, Promotion and Transfer Procedures Manual," which provides, in part, that "[w]here it appears that circumstances involving a particular panel member create the appearance of potential favoritism, preferential or biased treatment, the panel member must disqualify him/herself and be replaced." (ECF No. 23-3 at 2.) During the interviews of each candidate, each panelist is responsible for independently evaluating each candidate in good faith based upon the established criteria. (*Id.*) Panel members are required to take notes of each candidate and complete the Employment Evaluation Form, which ranks all candidates. (*Id.*) Upon completion of all interviews, a Consensus Panel Ranking Chart is prepared by the hiring manager, ranking candidates based on their scores. (*Id.*) The highest-ranked candidates on the Consensus Panel Ranking Chart are selected to fill the positions. (*Id.*)

On or about September 20, 2021, Plaintiff applied for two maintenance manager positions: No. 1914 in B&B RRD Construction and No. 1952 in RRD Facilities Maintenance. (ECF No. 1 at ¶ 13.) While declining to interview Plaintiff for No. 1914 (ECF No. 23-3 at 2), Defendant invited

Plaintiff on October 15, 2021 to interview for No. 1952 (*id.* at 3). Ultimately, following Plaintiff's interview, Defendant did not award him the position. (*Id.*) On November 4, 2021, Plaintiff submitted a complaint to SEPTA's Equal Employment Opportunity/Affirmative Action (EEO/AA) Department claiming, among other things, that he was not awarded Nos. 1914 and 1952 due to race discriminatory practices and retaliation for his prior lawsuit against SEPTA. (*Id.*) Plaintiff requested an investigation into the Maintenance Department as a whole, as well as the circumstances of his job applications. (*Id.*)

Meanwhile, on July 16, 2021, Plaintiff requested intermittent FMLA leave for his own health. (*Id.* at 4.) An employee of SEPTA's Leave Administration Unit sent Plaintiff a denial letter three days later. (*Id.*) Plaintiff again requested intermittent FMLA leave for his own health on November 9, 2021. (*Id.*) SEPTA again denied Plaintiff's request. (*Id.*)

On March 5, 2022, Plaintiff applied for the maintenance manager position of No. 2711 in RRD Facilities Maintenance. (*Id.* at 4.) On March 17, 2022, Plaintiff submitted a Charge of Discrimination against SEPTA to the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 3.) In his Charge, Plaintiff alleged that "he was discriminated against on the basis of race and retaliation" when he was denied an interview for No. 1914 and not hired for Nos. 1914 and 1952. (*Id.*) On March 30, 2022, Plaintiff applied for the maintenance manager position of No. 2839 in B&B RRD Construction. (*Id.* at 4.) Defendant informed Plaintiff on April 30, 2022 that it was not inviting him to interview for either No. 2711 or No. 2839. (ECF No. 24-9 at 67; ECF No. 23-32 at 2.) Defendant awarded No. 2711 to William Connelly and No. 2839 to Ryan D'Alfonso. (ECF No. 23-3 at 4.)

On August 29, 2022, the EEOC sent Plaintiff a Notice of Right to Sue Defendant (ECF No. 1 at 12), and Plaintiff filed his Complaint on November 7, 2022 (ECF No. 1). Defendant then

brought this Motion on March 5, 2024, to which Plaintiff responded in opposition. (ECF Nos. 23, 24.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-movant party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-movant bears the burden of proof, the movant's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has met its initial burden, the non-movant's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-movant fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

## III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendant argues that Plaintiff "failed to properly exhaust his administrative remedies regarding his failure to promote claims stemming from the March 2022 positions [(Nos. 2711 and

2839)]" because he did not include these claims in his EEOC Charge of Discrimination, and therefore, the Court should not consider them in evaluating Defendant's Motion. (ECF No. 23-2 at 8.) The Court disagrees.

Prior to filing a complaint, a plaintiff alleging discrimination must exhaust his administrative remedies by filing a charge with the EEOC. *Williams v. E. Orange Cmty. Charter Sch.*, 396 F. App'x 895, 897 (3d Cir. 2010) (citations omitted). The lawsuit is "limited to claims that are within the scope of the initial administrative charge." *Id.* (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)). EEOC charges are provided a "fairly liberal construction," and "the failure to check a particular box on an EEOC charge . . . is not necessarily indicative of a failure to exhaust the mandatory administrative remedies." *Lowenstein v. Catholic Health E.*, 820 F. Supp. 2d 639, 644 (E.D. Pa. 2011) (quoting *Schouten v. CSX Transp., Inc.*, 58 F. Supp. 2d 614, 616 (E.D. Pa. 1999)). "[T]he purpose of the filing requirement is to enable the EEOC to investigate and, if cause is found, to attempt to use informal means to reach a settlement of the dispute." *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 94 (3d Cir. 1999) (citing *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 963 (3d Cir. 1978)).

The issue arises when a party brings a claim in court that was not included in a previous EEOC charge. If the plaintiff failed to file any claim with the EEOC, then the court should dismiss the claim without prejudice with leave to file a claim with the EEOC, assuming the statute of limitations has not run. *See Wardlaw v. City of Phila. Street's Dep't*, 378 F. App'x 222, 226 (3d Cir. 2010) ("The District Court [properly] stated that the dismissal of the Title VII claim was without prejudice so that Wardlaw could file an amended claim once she received a right-to-sue letter from the EEOC."). If the plaintiff did file a claim with the EEOC, but omitted certain events that pre-date the filing, they are barred from later bringing those claims in court. *See, e.g., Ford-*

*Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 602 (E.D. Pa. 2015) (dismissing claims with prejudice because they were not included in an earlier-filed EEOC charge).

A different set of rules governs new events occurring after the filing of the EEOC charge. New events can be included in a lawsuit if a liberal construction of the EEOC charge indicates the EEOC was already on notice as to the general category of complaints the new events fall under. *See Foust v. FMC Corp.*, 962 F. Supp. 650, 656 (E.D. Pa. 1997) ("[C]laims not included in an EEOC charge but permitted by the district court typically either *arise during the pendency of the EEOC investigation* or are closely related to conduct alleged in the charge and are considered explanations of the charge.") (emphasis added); *Antol*, 82 F.3d at 1295 ("Requiring a new EEOC filing for each and every discriminatory act would not serve the purposes of the statutory scheme where the later discriminatory act fell squarely within the scope of the earlier EEOC complaint or investigation."). Further, even if not included in the charge, an event occurring during the pendency of the investigation may be validly brought before the court if the issue was nonetheless "brought to the attention of the EEOC investigator before the Right to Sue letter issued." *Foust*, 962 F. Supp. at 656.

On June 10, 2022, Plaintiff emailed his assigned EEOC investigator, David Cha ("Cha"), the following:

> [P]er our conversation here are some additional charges that I feel are relevant to my current complaint/charge that I feel is [sic] necessary to add;
>
> I applied for two more maintenance manager positions in my dept. around March 2022, in which [No. 2711] was reposted after the end date. (unusual). The Human Resources recruiter explained that certain items were missing from the 1st posting, therefore they had to repost it. HR informed me by way of SEPTA's internal site for employee's [sic], that I was selected for [No. 2711], then several days/weeks later I was informed that I was not selected for an interview for either [No. 2711 or No. 2839]. The HR recruiter explained [on May, 3 2022 that] I didn't meet the attendance performance criteria, and my dept. (RRD. B&B Facilities) sent them a record that I had 23 disciplinary points, I informed him that I would like to ins[p]ect

that document because there must be a mistake/error because I don't have any points, he explained that I would need to contact my dept. and they would need to send new information. [W]e contacted my dept. director & assistant director (Mark Nichols and Harry McCrossin) and I/we were informed by the director that I didn't have any points.

This is just a short summary, I have emails, dates, [and a] timeline to back up what it is that I'm saying in fact I believe I CC you in a few of those emails, also I just find this whole situation to be very odd, suspicious and strange, that these issues are coming up after I put in my internal and external complaint of discrimination/retaliation.

(ECF No. 24-9 at 74.) That same day, Cha responded to Plaintiff, "I will add this to your charge and review as soon as I am able to." (*Id.* at 73.) About a month later, on July 15, 2022, Plaintiff contacted Cha on the same email thread to "find out if there is any update or what the status of [his] complaint is," to which Cha responded, "Your charge is still under investigation. I am still awaiting Septa's response. I expect to have it by the end of the month." (*Id.* at 72–73.)

According to Defendant, although Plaintiff indicated to Cha that he wanted to amend his Charge of Discrimination to include Defendant's decision to not interview him for either No. 2711 or No. 2839, and Cha indicated that he would amend the Charge accordingly (*Id.* at 73), Plaintiff nevertheless failed to exhaust his administrative remedies because "there is no evidence that [he] received and/or signed an amended charge that included his new complaints." (ECF No. 23-2 at 8–9.) However, Plaintiff informed Cha of his claims regarding Nos. 2711 and 2839 in June 2022, well within the time between him filing his Charge in March 2022 (ECF No. 23-26 at 2) and the EEOC issuing its Right to Sue letter in August 2022 (ECF No. 1 at 12). In other words, Plaintiff's claims regarding Nos. 2711 and 2839 arose during the pendency of the EEOC investigation of his Charge, and thus, the Court finds that he has exhausted his administrative remedies regarding these claims.

## IV.    TITLE VII AND PHRA CLAIMS (COUNTS I–IV)

### A. Race Discrimination (Counts I and III)

Title VII and the PHRA prohibit an employer from engaging in race discrimination against an employee. *See* 42 U.S.C. §§ 2000e-2, *et seq.*; Pa. Stat. Ann. tit. 43, §§ 951, *et seq.* Title VII racial discrimination claims are analyzed under the familiar burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973). The Third Circuit has applied this framework to PHRA claims. *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999) ("[T]he standards are the same for purposes of determining [a] summary judgment motion.").

Under *McDonnell Douglas*, a plaintiff can establish a prima facie case of employment discrimination by demonstrating that "(1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought to attain or retain; (3) [he] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Then, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The burden then shifts back to the plaintiff to show that the employer's stated reason is pretext for discrimination. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).

As stated above, Plaintiff alleges that he applied for and was not interviewed and/or promoted to the following maintenance manager positions:

- No. 1914 – B&B RRD Construction (applied September 20, 2021)

- No. 1952 – RRD Facilities Maintenance (applied September 20, 2021)

- No. 2711 – RRD Facilities Maintenance (applied March 5, 2022)

- No. 2839 – B&B RRD Construction (applied March 30, 2022)[2]

## 1. Prima Facie Case

While it assumes that Plaintiff can establish a prima facie case of race discrimination for No. 1952, Defendant argues that Plaintiff fails to establish a prima facie case for Nos. 1914, 2711, and 2839 because he was not qualified for the positions and cannot establish an inference of discrimination. (ECF No. 23-2 at 12, 16.) For purposes of summary judgment only, the Court will presume that Plaintiff can establish a prima facie case of race discrimination and, therefore, will consider whether Plaintiff can prove that Defendant's proffered reasons for not interviewing/promoting him were pretexts for race discrimination.

## 2. Legitimate, Non-Discriminatory Reasons and Pretext

As for articulating a legitimate, nondiscriminatory reason for not interviewing Plaintiff for Nos. 1914, 2711, and 2839, Defendant satisfies this "relatively light" burden by citing how the individuals who were selected for each position were well-qualified. (ECF No. 23-2 at 14-15). *Fuentes*, 32 F.3d at 763. Defendant also articulates a legitimate, nondiscriminatory reason for not promoting Plaintiff to No. 1952, "namely that, based upon his interview, Plaintiff was not the most qualified person for the job." (ECF No. 23-2 at 16.) *See Taylor v. Harrisburg Area Cmty. Coll.*, 2014 WL 347036, at *12 (M.D. Pa. Jan. 30, 2014), *aff'd*, 579 F. App'x 90 (3d Cir. 2014)

---

[2] In his Response in Opposition to Defendant's Motion, Plaintiff alleges that Defendant failed to promote him "to the position[] of Maintenance Manager that he applied for in . . . November 2022 . . . in violation of" Title VII and the PHRA. (ECF No. 24 at 7.) But in his Complaint, Plaintiff failed to plead any facts regarding the November 2022 position. Thus, the Court cannot and does not contemplate this position in its merits analysis. *See Diodato v. Wells Fargo Ins. Servs., USA, Inc.*, 44 F. Supp. 3d 541, 559 (M.D. Pa. 2014) ("It is well-settled that [a plaintiff] may not amend his complaint in his brief in opposition to a motion for summary judgment.") (quotation omitted); *Duran v. Merline*, 923 F. Supp. 2d 702, 723-24 (D.N.J. 2013) (finding summary judgment appropriate on access to courts claim when plaintiff attempted to cite two additional instances of misconduct in opposition brief which were absent from plaintiff's complaint).

("Defendant has offered legitimate, nondiscriminatory reasons for not promoting Plaintiff . . . namely that Plaintiff was not the most qualified individual for the position."); *see also Thompson v. Bridgeton Bd. of Educ.*, 9 F. Supp. 3d 446, 455–57 (D.N.J. 2014), *aff'd*, 613 F. App'x 105 (3d Cir. 2015) ("Poor performance in an interview is recognized as a legitimate nondiscriminatory reason for failure to hire or promote.").

It is Plaintiff's burden to prove that these were not Defendant's true reasons for not interviewing/promoting him, but were instead pretexts for discrimination. To do so, Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

"To discredit the employer's proffered reason, [] the plaintiff cannot simply show that the employer's decision was wrong or mistaken." *Id.* at 765 (citations omitted). "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (internal quotation marks and citation omitted). The burden on a plaintiff is "difficult," *id.*, but as the Third Circuit has explained, "[i]t arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992).

To show that an invidious discriminatory reason was more likely than not a cause for the employer's action, "the plaintiff must point to evidence with sufficient probative force that a

factfinder could conclude by a preponderance of the evidence that [race] was a motivating or determinative factor in the employment decision." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644–45 (3d Cir. 1998). Examples include showing that the employer has previously discriminated against the plaintiff, that the employer has discriminated against members of the plaintiff's protected class or another protected class, or that similarly situated people not within plaintiff's class were treated more favorably. *See id.* at 645.

Plaintiff argues that there are five genuine issues of material fact from which a factfinder could infer that Defendant's stated reasons for not interviewing/promoting him are pretextual.

### a.   Relative qualifications of the candidates

Plaintiff argues that his qualifications were so superior to the other candidates for the aforementioned positions that a reasonable factfinder could discredit Defendant's proffered reasons for selecting these candidates instead of Plaintiff. (ECF No. 24 at 30.) According to his resume, Plaintiff graduated from a vocational technical high school with a concentration in electrical construction and obtained a diploma in residential and commercial electricity from Orleans Technical Institute. In addition to describing his work at SEPTA as "Installation, Construction, Maintenance, Repair and Test [sic] of Electrical Equipment within Rail Road Facilities," Plaintiff's resume lists the follow tasks and achievements: (1) was "[i]nvolved with the renovation of various train stations"; (2) had "[d]aily interactions with senior management in order to assess and discuss strategies for troubleshooting equipment and buildings"; (3) "[s]killfully performed scheduled maintenance on heating and cooling units"; (4) "[d]etermine[d] financial aspects of [the] job based on repair or replacement of electrical equipment"; (5) "[s]ignificantly improved overall efficiency by designing an inventory management technique . . . [that] has been adopted in all train stations"; (6) "[u]tilize[d] extensive system and repair expertise to train over 5

new hires in technical and hands-on aspects of the job"; and (7) "[r]esearched and developed necessary calculations to make repairs and fulfill design specifications." (ECF No. 23-15 at 2.)

When comparing the relative qualifications of candidates for promotion, the Third Circuit has cautioned that more than a dispute must be shown to establish pretext. *Steele v. Pelmor Labs., Inc.*, 642 F. App'x 129, 135 (3d Cir. 2016) (internal citations omitted). Even "[t]he fact that a court may think that the employer misjudged the qualifications of the applicant does not in itself expose him to Title VII liability . . . ." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992) (internal quotation marks omitted). Rather, to demonstrate pretext, Plaintiff must show "that the qualifications of the person actually promoted were *so much lower* than those of h[is] competitors that a reasonable factfinder could disbelieve the claim that the employer was honestly seeking the best qualified candidate." *Bray v. Marriott Hotels*, 110 F.3d 986, 999 (3d Cir. 1997) (Alito, J., dissenting). "In the absence of such a significant degree of difference in qualifications that may arouse a suspicion of discrimination, we defer to the employer's hiring decisions," *Steel v. Pelmor Lab'ys Inc.*, 642 F. App'x 129, 135 (3d Cir. 2016), as Title VII "was not intended to diminish traditional management prerogatives." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981) (internal quotation marks omitted).

Here, as discussed below, Plaintiff has not shown the type of disparity in the relative qualifications between himself and the other candidates from which a reasonable factfinder could find pretext.

### i. No. 1914

No. 1914's qualifications included "two (2) years advanced technical training in field of specialization" and "[t]hree years relevant Construction Operating/Maintenance/Inspection experience." (ECF No. 23-12 at 3.) According to Swain Tamar ("Tamar"), a former senior

corporate    recruiter    at    SEPTA,    the    requirement    for    "Construction Operating/Maintenance/Inspection experience" means having experience in Construction Operating, Construction Maintenance, or Construction Inspection. (ECF No. 23-13 at 6.) For this position, Defendant was looking for an individual with "a background in ground up new construction that had expertise in the area of carpentry, building layout, masonry type of work." (ECF No. 23-14 at 6.)

Defendant chose John Jaskolka ("Jaskolka"), who is white, for the position. (ECF No. 23-10 at 7.) At the time of his application for No. 1914, Jaskolka was a carpenter with almost twenty (20) years of experience, including having worked for SEPTA since 2015. (ECF No. 23-16 at 2.) Prior to joining SEPTA, Jaskolka had spent approximately ten (10) years as a carpenter/foreman for a construction company, where his duties included communicating with the project manager regarding material delivery schedules, managing a crew on an installation project, and being responsible for the layout and shooting elevations for the project's wall panels. (*Id.*) From August 2015 until January 2020, Jaskolka was a carpenter/leadman at the SEPTA Exton Station, where he laid out and shot "elevations for the High Level Platform"; set precast platforms and steps; and built shelters, the outbound canopy, and concrete forms for the piers. (*Id.*) From January 2020 through the time of his promotion, Jaskolka acted as a back fill foreman for SEPTA, where he (among other things) handed out daily assignments to the crew, gave daily updates to the Assistant Director, and completed the "Exton Station Improvement Project." (*Id.*)

Upon reviewing those who applied for No. 1914, Tamar determined that Plaintiff's resume did not reflect any work experience in construction or in trades other than as an electrician. (ECF No. 23-13 at 5.) Although Plaintiff used the word "construction" in his resume, Tamar testified that the construction Plaintiff refers to "relate[s] to electrical components, as opposed to

construction of structures." (*Id.* at 7.) Jaskolka's experience as a carpenter, however, qualified as Construction Operating or Construction Maintenance because he was actually "building in construction projects." (*Id.* at 6.)

### ii.  No. 1952

No. 1952's qualifications included "two (2) years advanced technical training in field of specialization" and "[t]hree years relevant facilities Operating/Maintenance/Inspection experience." (ECF No. 23-19 at 3.) Defendant chose Christopher Dolt ("Dolt"), who is white, for the position. (ECF No. 23-10 at 20.) Dolt had approximately twenty-eight (28) years of electrical work experience, having joined SEPTA in 2014 after working for several other companies performing "residential and light commercial work." (ECF No. 23-23 at 2.) In contrast, Plaintiff had approximately twenty-three (23) years of experience doing electrical work. (ECF No. 23-15 at 2.)

### iii.  No. 2711

No. 2711's qualifications included "two (2) years advanced technical training in field of specialization" and "[t]hree years relevant facilities Maintenance/Inspection experience." (ECF No. 23-28 at 3.) Defendant chose William Connelly ("Connelly"), who is white, for the position. Connelly had worked as a general contractor since 1985, joining SEPTA in 2003 as a millwright. (ECF No. 23-26 at 33.) Connelly's experience included "[t]roubleshooting, repairing and performing maintenance on HVAC, hydraulic systems, & chilled water and vacuum systems," and "[o]perating and maintaining equipment such as forklifts, loaders, bobcats, cranes . . . high reaches and backhoes." (*Id.*) As a millwright, Connelly was "[r]esponsible for the maintenance and repair of escalators, elevators, pumps etc." (*Id.*)

### iv.  No. 2839

14

No. 2839's qualifications included "two (2) years advanced technical training in field of specialization" and "[t]hree years relevant construction Operating/Maintenance/Inspection experience." (ECF No. 23-28 at 5.) Defendant chose Ryan D'Alfonso ("D'Alfonso"), who is white, for the position. Prior to his promotion, D'Alfonso had been employed by SEPTA since 2016 as a first-class carpenter. (ECF No. 23-33 at 8.)

Taking all four positions into account, there is no evidence that Plaintiff's qualifications were overall superior to those of the selected candidates, much less that the selected candidates' qualifications were "so much lower" that a reasonable factfinder could disbelieve the claim that Defendant honestly sought the best qualified candidate. *Bray*, 110 F.3d at 999.

### b. Interview criteria

Plaintiff argues that the scores McCrossin awarded him during his interview for No. 1952 were "subjective and not based on any objective criteria." (*Id.* at 28.) Each interview question for No. 1952 included suggested answers for the panelists in order to help the panelist define the scope and relevance of a candidate's responses. McCrossin testified that he would sometimes circle the suggested answers if the candidate "hit one of those points." (ECF No. 23-10 at 16.) When asked how he would determine the score to give based on the number of the suggested answers he circled, McCrossin responded that if he felt the candidate "hit most or all of the suggested answers[,] . . . it would be 5 [out of 5] and then you just have to kind of decipher what points. If they didn't hit everything[,] you just have to evaluate the points that they did come up with and come up with their score." (*Id.*) In light of the testimony given, the record belies Plaintiff's argument that McCrossin's scoring of Plaintiff was "not based on *any* objective criteria." (*Id.* at 28) (emphasis

added).[3] Moreover, all three panel members scored Dolt higher than Plaintiff (ECF No. 23-22), and there is no evidence that the panel evaluated Plaintiff, Dolt, or the other candidates for the position based on anything other than the interview questions and their suggested answers. *See Fitzgerald v. Nat'l R.R. Passenger Corp.*, 2016 WL 3854055, at *4 (E.D. Pa. July 13, 2016) (granting summary judgment where plaintiff provided no evidence that "decision makers illegally considered race in selecting the most qualified candidates for the positions").

### c. "Cat's paw"

Plaintiff argues that, under the "cat's paw" theory of liability, the other members of the interview panel could have been influenced by McCrossin, who noted in his internal EEO statement following Plaintiff's 2021 interview that "he had never promoted any African American to the position of maintenance manager." (ECF No. 24 at 29.) Cat's paw theory posits that an employer may be held liable "if one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision." *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011). Thus, to prevail under this theory, Plaintiff must prove that McCrossin's discriminatory animus was the proximate cause of his failure to be promoted for No. 1952. *McKenna v. City of Philadelphia*, 649 F.3d 171, 177–80 (3d Cir. 2011). However, the record contradicts the discriminatory motives Plaintiff attributes to McCrossin. The fact is that of all of the panel members, McCrossin gave Plaintiff the highest scores he received. (ECF No. 23-22.) Indeed, in his EEO statement, not only did McCrossin express that Plaintiff "did very well in the interview," but he stated that he had "never had a problem with [Plaintiff]" since working in

---

[3]As the district court held in Plaintiff's prior suit against SEPTA, Plaintiff fails to "explain how an interviewer could assign a numeric score to a candidate's response based on the suggested answer without applying some subjective judgment. The score necessarily is based on a subjective evaluation of the responses that is guided by the suggested answer." *Boykins*, 2017 U.S. Dist. LEXIS 56541, at *6.

the same department as him and that the two "have always been friendly in passing." (ECF No. 24-8 at 16.)

### d.  Independent evaluations

Plaintiff argues that, following his interview, "the panel members discussed Plaintiff's performance, even though SEPTA's policy and procedure required that each panel member must independently decide the rating of each candidate." (ECF No. 24 at 29.) Once again, the record belies Plaintiff's argument. In McCrossin's EEO statement, he clarified that the panel members "entered the information in the system and chose the candidate with the highest score. We just read the resume, but we do not discuss what we are ranking or anything like that." (*Id.*) This excerpt directly refutes Plaintiff's assertion that the panel members essentially conspired to not promote Plaintiff in lieu of independently evaluating his interview performance.

### e.  Statistical evidence

Lastly, Plaintiff argues that "statistical evidence [exists from which] a jury could infer race discriminatory failure to promote African Americans to maintenance manager positions in his Department by SEPTA." (*Id.* at 28.) The "statistical evidence" Plaintiff points to is McCrossin's statement "that of all the Maintenance Managers he hired, none them was a minority and all of them were Caucasian." (ECF No. 24-1 at 12.)

"Statistical evidence of an employer's pattern and practice with respect to minority employment may be relevant to a showing of pretext." *Ezold*, 983 F.2d at 542. However, initially, a plaintiff must demonstrate the statistical significance of the data. *See Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1112 n.4 (3d Cir. 1997). Where a court must engage in speculation regarding the relevance of proffered statistical evidence, it may find that evidence to be insufficient. *See Flax v. Dep't of Gen. Servs.*, 2024 U.S. Dist. LEXIS 61743, at *9 (M.D. Pa. Apr. 1, 2024) ("Statistical

evidence is unconvincing if it requires the court to speculate about its relevance." (citing *Newark Branch, N.A.A.C.P. v. City of Bayonne, N.J.*, 134 F.3d 113, 121 (3d Cir. 1998))), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 143272 (M.D. Pa. July 9, 2024).

The Court concludes that Plaintiff's "statistical evidence" fails to support a finding of pretext, for Plaintiff has not demonstrated that simply because none of the managers McCrossin hired are racial minorities, Defendant had a pattern of denying minority applicants managerial positions. As the district court stated in Plaintiff's previous lawsuit against SEPTA, "the race of prior persons promoted is meaningless without evidence regarding whether African-American applicants were denied the promotion or the relative qualifications of the applicants." *Boykins*, 2017 U.S. Dist. LEXIS 56541, at *5. Under these circumstances, Plaintiff's "statistical evidence," such as it is, requires speculation as to the cause of the racial make-up of Defendant's managerial ranks.[4] Thus, this evidence does not provide support for a reasonable inference that Defendant's reason for not interviewing/hiring Plaintiff was not credible or "that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Fuentes*, 32 F.3d at 764.

Viewed together and in the light most favorable to Plaintiff, the "evidence" pointed to by Plaintiff is insufficient for a reasonable fact finder to conclude that race played a role in Defendant's decision not to interview/promote him. Thus, the Court grants summary judgment for Defendant on Counts I and II.

**B. Retaliation (Counts II and IV)**

---

[4] The Court notes that Plaintiff's "statistical evidence" does not appear to involve statistics. While all statistics use numbers, not all numbers, such as zero, are statistics.

Title VII and the PHRA also protect employees who attempt to exercise the rights guaranteed by their respective provisions against retaliation by employers. *See* 42 U.S.C. § 2000e-3(a); 43 Pa. Stat. § 955(d). In the absence of direct evidence of retaliation, we consider retaliation claims for both statutes under the *McDonnell Douglas* framework. *See, e.g., Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005).

Under *McDonnell Douglas*, to establish a prima facie case of retaliation a plaintiff must show: (1) he engaged in an activity protected by Title VII; (2) the employer took an adverse employment action either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *See Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). As before, once a plaintiff establishes a prima facie case, the burden shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015). If the employer advances such a reason, the burden shifts back to the plaintiff to demonstrate that "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (quoting *Marra*, 497 F.3d at 300).

Plaintiff alleges several theories of retaliation, including that he was denied (1) a promotion for the four aforementioned positions because of his prior lawsuit against SEPTA; (2) a promotion for the two March 2022 positions because of the EEOC Charge he filed on March 17, 2022; and (3) intermittent FMLA leave because of his prior lawsuit and EEOC Charge. (ECF No. 24 at 16-17.) For purposes of its Motion, Defendant concedes that Plaintiff "participated in a protected activity" and that "not being promoted and denial of FMLA leave is an adverse action." (ECF No. 23-2 at 19.) However, Defendant contends that Plaintiff fails to establish a prima facie case of

retaliation because "there is no causal connection between any of his protected actions and the adverse actions." (*Id.*)

The Court finds that even if Plaintiff could establish a prima facie case of retaliation, his claim would still fail because he cannot show that Defendant's nonretaliatory reasons for not interviewing/promoting him are a pretext for retaliation. As Plaintiff advances the same "pretext" arguments with respect to his retaliation claim as he did for his discrimination claim, the preceding analysis applies to bar his retaliation claim as well. Accordingly, the Court grants summary judgment for Defendant on Counts II and IV.

## V.    FMLA CLAIM (COUNT V)

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An eligible employee is one who has been employed by the employer for at least 12 months and who has provided at least 1,250 hours of service with the employer during the previous 12-month period, subject to certain exclusions inapplicable here. *Id.* at § 2611(2). The statute prohibits both (1) interference with the exercise of FMLA rights and (2) retaliation against an employee for asserting those rights. 29 U.S.C. §§ 2615(a)(1)-(2); *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508–09 (3d Cir. 2009). Here, Plaintiff asserts that Defendant violated the FMLA under both theories.

To establish a claim for interference under the FMLA, a plaintiff must demonstrate that "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was

denied benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (citation omitted). To establish a prima facie case of retaliation under the FMLA, a plaintiff must show that (1) she availed herself of a protected right under the FMLA; (2) she was subject to an adverse employment decision; and (3) there was a causal connection between the protected activity and the subsequent adverse job action. *Naber v. Dover Healthcare Assocs.*, 473 F. App'x 157, 159 (3d Cir. 2012). While the interference and retaliation provisions are distinct, they share a threshold requirement that the employee must actually be entitled to FMLA leave in the first instance. *See Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006) (noting that an interference claim requires an employee to show that he was not only entitled to FMLA benefits but that he was denied those benefits). Summary judgment is appropriate where the plaintiff cannot establish entitlement to leave as a matter of law. *See Banner v. Fletcher*, 834 F. App'x 766, 769–70 (3d Cir. 2020) ("Because the record shows that [plaintiff] had exhausted her leave . . ., [defendant] is entitled to summary judgment on [the interference] claim.").

Defendant argues that it could not have interfered with Plaintiff's FMLA rights in July and November 2021 because at those times, Plaintiff had not worked 1,250 hours in the preceding 12 months, and therefore, was not eligible to take FMLA leave. (ECF No. 23-2 at 23.) Plaintiff responds that he had worked over 1,250 hours in the 12 months prior to his November FMLA request, noting that "[b]etween November 8, 2020, and November 8, 2021, [he] worked a total of 1,368 hours." (ECF No. 24 at 24.)

The Court finds that even if Plaintiff were to establish that he worked sufficient hours to qualify for FMLA leave, his interference and retaliation claims both fail as a matter of law because the record does not establish that he was entitled to such protected leave. To prove entitlement, Plaintiff must prove that he had a "serious health condition" that rendered him unable to work. 29

21

U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined in the FMLA as an "illness, injury, impairment, or physical or mental condition" that involves either "inpatient care in a hospital, hospice, or residential medical care facility" or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The burden is on Plaintiff to prove the existence of an FMLA-eligible condition. *Schaar v. Lehigh Valley Health Servs., Inc.*, 598 F.3d 156, 158 (3d Cir. 2010).

Plaintiff has not set forth sufficient evidence showing that he had a serious health condition. In his Complaint, Plaintiff asserts that on July 16, 2021 and November 9, 2021, he requested intermittent FMLA leave because of "his serious medical condition." (ECF No. 1 at ¶¶ 27, 31.) Beyond these cursory references, Plaintiff has produced no medical records, no certification from a health care professional, or any other documentary or testimonial evidence elaborating on how he was unable to perform his job functions or that hospitalization or continuing medical treatment was necessary. *See Criscitello v. MHM Services, Inc.*, 2013 U.S. Dist. LEXIS 112470, at *5–6 (M.D. Pa. Aug. 9, 2013) (holding that self-diagnosis and mere intent to seek treatment is not enough to establish the existence of a serious medical condition under the FMLA). For these reasons, Plaintiff fails to show that he suffered a serious health condition which would have entitled him to FMLA leave.

Because Plaintiff was not entitled to FMLA leave, it logically follows that Defendant cannot be liable for interference or retaliation under the FMLA as a matter of law. *See Callison v. City of Philadelphia*, 430 F.3d 117, 119–20 (3d Cir. 2005). As such, the Court grants summary judgment for Defendant on Count V.

## VI.    CONCLUSION

For the reasons discussed above, Plaintiff has failed to raise a genuine issue of material fact regarding whether he can meet his evidentiary burden to establish racial discrimination under Title

VII or the PHRA, retaliation under Title VII or the PHRA, or interference and retaliation under the FMLA. Consequently, Defendant is entitled to summary judgment on all Counts. An appropriate Order follows.

**BY THE COURT:**

**/s/ Kelley B. Hodge**

_____

**HODGE, KELLEY B., J.**